Good morning, Your Honors. May it please the Court, Andy Wagner on behalf of the veteran, Daniel Brewer. The issue in this case is whether the lower court misinterpreted Section 7B of the Veterans Claims Assistance Act by holding that retroactive re-adjudication under that provision does not apply to claims previously denied on the merits, even when those claims are not well-grounded as a matter of law and should have been dismissed. Isn't it easier to start in the back at the end of this case, which is notwithstanding arguments about whether it should have been granted on the merits or whether it was well-grounded, The issue is there's a two-year statute of limitations, and am I correct that unless you prevail on your constitutional challenge of that statute of limitations period, this case is over? I would agree with that, Your Honor. Okay. I appreciate that. So, why don't you tell us about your constitutional challenge? All right. The constitutional challenge, Your Honor, is this. The statute 7B creates two classes of veterans. The statute requires veterans to file for retroactive re-adjudication within a two-year statute. It says that the VA has no obligation to go out and find all these claims that might be eligible under the statute, so that creates constitutional concerns, and the reason is this. You have two classes of veterans. Neither of those classes of veterans request re-adjudication, but some of those, one class of veterans are granted re-adjudication because the VA, on its own motion, grants re-adjudication. Yeah, but it's not based on some nefarious selection based on race, sex, gender. I mean, it's based on presumably Congress was thinking, well, if something is called to their attention, should the VA ignore it entirely and go forward, right? Don't you read that as the exception that Congress felt compelled to carve out, and isn't that a reasonable exception? It may or may not be a reasonable attempt of the legislature to try and make this a matter of administrative convenience. A rational basis review? I'm sorry? A rational basis review? It would be a rational basis review, but even under a rational... There's no impermissible classification here that brings us to a stricter standard, right? Well, it's not... If there's a reason for this, why this distinction may have been drawn, then it's not non-constitutional. Right, it's not going to be subject to strict scrutiny because it's not a... So you say, well, if, say, the VA is sitting there, let's say somebody is at the RO says, well, you know, I remember this case. We threw this guy out for lack of a well-grounded claim, and they say, well, you can go ahead and process that instead of just keeping your mouth shut, and maybe the veteran would not know this, not know to come forward. So do you think that's irrational to have Congress saying, in essence, well, you know, if the VA has information in its own pocket that's going to absolutely say you all need to re-adjudicate, go ahead and get it over with? It's irrational because it's arbitrary. The way that one veteran gets this re-adjudication right and another does not. It's arbitrary. It depends on the subtleties and the... That's what creates the two classes that allow you to sort of get near the... Absolutely. Assuming, for purposes of argument, I agree with you, there were two avenues. A veteran either has to step up himself and file, or he can sit there and hope that the VA will do the work for him. And the two classes I'm talking about here have nothing to do with the veterans who do obviously request re-adjudication. It's the two classes of veterans, neither one of which requests re-adjudication and relies on the BVA. So it's not like the veteran in those two categories has no power to get this decision re-adjudicated. It's all up to the VA. Unless you require the VA to review every file itself, right? Right. Well, I mean, the law requires equal protection. You either grant the benefit to everybody, or you deny the...  They do have the power. I mean, every veteran has the power. It was just a time frame of two years. You're right. They don't have the power ten years later to come in. But within the two years, Congress has statute of limitations for filing all the time. That's the way this judicial system runs. Right. Well, that's true. But even statute of limitations needs to be applied equally to veterans similarly situated. And in this case, it's being applied against some who don't request re-adjudication on their own. But it's not being applied to others who don't request re-consideration on their own. There are two classes of similarly situated veterans here that don't request re-consideration. Some get re-adjudication. Some don't. Now, that would be okay if there was a mechanism where you could say, well, yes, based on these criteria, these veterans are entitled to re-adjudication and these are not. But there is nothing like that. Isn't that going to be done on the merits of the case? I don't know. Why isn't that sufficient? I don't understand the question, Your Honor. Isn't the decision as to whether to grant re-adjudication going to be done on the merits of the case? Isn't there going to be an officer making a decision? And why isn't that an adequate, rational basis? There is nothing in the statute that says grant re-consideration if the facts of the case are A, but not if the facts of the case are B. The only way that something gets re-adjudication is if you have a proactive regional office that says, hmm, let's go out and find some claims that might be eligible. What about if Congress had restructured the statute and said it's only veterans who come forward and file, except that if VA gets a congressional request calling out and asking the VA to take a look at something within that two-year period, then the VA can make that request rather than the veteran coming forward himself. Would that satisfy? That would be a lot better. Why? You're saying it's all arbitrary. If you say arbitrary, it's because you're saying there's no criteria. Right. Well, okay, so the criteria is whoever gets their Congress, whatever congressional office has to figure that out, is that any less arbitrary than what you're arguing about? Well, I can see your point, Your Honor, but at least if you are holding the veterans all to the same standard, you have to go out and- If the veterans' attention is called to this particular case for whatever reason, then we don't think they should just sit on their hands and ignore it and wait for the veteran to come in. If they are told about this, if they have reason to know that there's a case here that ought to be re-adjudicated within this two years, the Veterans Administration can come forward itself. Why is that not the kind of policy that all veterans' organizations would want to promote? That allows them to come forward. They may want to promote that, but in effect, in reality, it doesn't work that way because you have different regional offices around the country. Some of them may be proactive and may be looking for claims that are eligible. Others may, as in this case, say this isn't even a claim for re-adjudication. This is an acute claim and deny it based on a pretext. If you're one of the veterans, like my client, who is dealing with a recalcitrant RO, and somebody the next day over has a proactive RO that's granting him reconsideration even though he didn't request it within two years, he would say, hey, I'm being treated unfairly. But he wouldn't be in that class if he hadn't missed his opportunity to raise it within two years. Yeah, and neither would the person in the next state because he also missed the two-year statute limitation. But why should it be selectively applied against my client and not somebody else? So your solution would be that nobody other than the veteran himself coming forward can satisfy it because to allow that kind of exception would be arbitrary. And not only that, I believe that my client... So how does that get you any relief? That just means that the other cases shouldn't have been re-adjudicated within that two-year period in the absence of a veteran coming forward. It gives me relief, Your Honor, because this statute has to be found to be unconstitutional as against my client's equal protection rights. And it should not be selectively applied against him. That's how we get relief, in my opinion. And my position is supported by the Logan decision, which I cited in my brief. And that is a state... That involved the dismissal of an unfair labor practice claim in the commission, unfair labor practice commission, because the commission failed to hold a probable cause hearing within the specified time period. And the Supreme Court said that enforcing that dismissal was unconstitutional because it created two classes of claimants. They were both similarly situated. They had filed claims, but because of some act beyond their control, it was dismissed because the board, the commission, didn't hold a timely probable cause hearing. I assume you're correct in the statute of limitations is unconstitutional, and therefore it goes away. There is no statute of limitations for raising an argument that your claim was denied for lack of real groundness so you get back in the ballgame. Is there any way that Congress can recover the ground that we take away from them if we follow your lead? Can Congress now enact a two-year statute of limitations statute that says, how can they go back? Don't you eliminate any ability of the Congress to have any limitation period on such cases? No. I mean, they could have. First of all, we have to deal with this case, Your Honor. I'm trying to figure out what the end game is here. If there's no longer any statute of limitations, we just wipe it off the books. Then going back as far as you want, any veteran who thinks that his claim was knocked out for lack of real groundedness, even though there might be an argument that it was knocked out on the merits, can get into court. And it would be a long way for the Congress to go back and say, you know, we really meant to have a two-year time frame on this stuff for probably good and sound reasons. And you open the door, so you go back and you start calling through the records and any arguable rejection of a claim for lack of real groundedness creates a lawsuit. I just want to understand the context. Yes, I mean, I think it does open it up to that, except, you know, I think it would be limited to five years. That's the price that the Congress and the public pays for having tried to be a little generous in the circumstance where they knew right away that they needed to re-adjudicate. Right. Well, I think it would be limited to claims that are currently pending where the statute of limitation has been selectively enforced against. Why? Well, because they could always come out with a change in the statute saying, you know, making it clear that from now on or from within two years. That's too late. I mean, the two years from what? Right. It was the two years from something, and the from something is in the history book now. They can't create a... But they could do it prospectively. They could do it prospectively, Your Honor. Would you like to save your rebuttal time? I would. I have two more minutes. I just want to just... That's your rebuttal. Oh, I would like to do that. Thank you, Your Honor. Thank you. Mr. Dinser. May it please the Court. The Court of Veterans' Appeals correctly concluded that the rule of finality is a product of jurisdiction and the VCAA does not rescue the claim. As the Court has... There is actually two reasons the VCAA doesn't apply. One is the failure to meet the November 9, 2002 limit. The second is that the original claim was actually not rejected as not well-grounded. It was rejected on merit. So along with... This case for getting past the statute of limitations requires us to read the Logan case from 1985 at the Supreme Court. How do you read that case? Well, Your Honor, the Logan case did acknowledge... I mean, there's two elements about the Logan case that are relevant. The first is with respect to their due process claim and the question of whether there's a property interest in their right to have the VCAA used as a vehicle to reopen their case. Logan says that there is some property right in a claim and specifically it says the cause of action is a species of constitutionally protected property. It does reflect that, but then it recognizes the fact that there can be limits on that. In fact, the Logan case says, this is not to suggest that the State must consider the merits of the claim when the claimant fails to comply with a reasonable procedural requirement or fails to file a timely charge, as it footnotes out. So Logan specifically limits itself when the applicant has failed to meet deadlines such as the one that we're facing here. But moreover, looking at the broader picture, although this Court has suggested that there may be a property interest in veterans' benefits in the Cushman case, this Court has never suggested or indicated that there would be a property interest in their right to re-review of a case that has already reached finality, which is what we have here. A case that's already run completely and now they're claiming a property interest in the right to reopen that. And there's no basis of any property interest in that, which means that the whole due process analysis proffered by my colleague at the bar fails before it even gets started. What if the statute had the exception for the Veterans Administration and it said, okay, either a claimant can come in, or if the Veterans Administration can do whatever it wants. So if it happens to like a particular case, it can do it, and if it doesn't like it, it doesn't have to come forward within the two-year period. Would that be arbitrary enough for you? No, Your Honor, because, I mean, effectively what it would be saying is either the veteran can come in and then it would be silenced. So unless it prohibited the VA from opening one when there was a veteran coming in, presumably the VA, if it's doubled across one that was significant or maybe there was a congressional reference, could contact the veteran and there could be a change to review. So doesn't even rational basis review require that there be some rational, reasonable reason to have this done? And if there's no evidence that there was any reason other than, well, let's just give him the discretion to do what he wants, is that sufficient? Well, just so I'm clear, Your Honor, when you say him, you mean the VA? VA. There is a rational basis, of course, in that if the VA stumbles across a claim, I think what Congress was thinking is that, in fact, what they said is we don't want to put a burden on the VA to go through and try to figure out every single one that could meet this. But if they stumble across one or the court suggested a congressional reference or maybe it comes up in a different context, if they see one, then the Veterans Administration could go forward and proceed and take a look at it. And there's clearly a rational basis in once one is identified in determining whether there's anything there worth pursuing. At the same time, this is similar to your rational basis in putting an end to the review process by creating a two-year limit and then having it cut off. As the Supreme Court has said, has recognized, a deadline created to limit the burden on a state or a state agency is rational, and that's in DeStru or the City of Charleston. Aren't both administrative convenience and assisting veterans a legitimate government interest that would satisfy the rational basis test? Absolutely more than satisfied, Your Honor, yes. So for those reasons, and also because the statute does not sort people into different groups, the statute is applied evenly to everyone. Like every statute, there are some people who it applies to and others that it doesn't, but it is applied to everyone equally. If you've got a claim, then you can either pursue it yourself or if the VA identifies it as a claim or it's referred by Congress, then it may have a look taken at it. But every veteran is treated the same under the statute. Well, the adversary's argument is that's not so. He has a subclass of veterans who themselves do not prosecute their claims. And then he says, that's a subclass. So I've got Clevenger and Prost, and they're veterans who did not prosecute their own claim, but the VA chose to help Prost but not Clevenger. As I understand it correctly, that's the discriminatory line that he's identified. And, Your Honor, at the core, that's a self-selected subclass. That is somebody who said, I choose to be in this group as opposed to this group. And because I choose to be in this group, I may be treated differently. Well, the rational basis for distinguishing between those two people, and just taking your adversary's case as he presents it to us, is that the VA knew about one but not the other. The VA had reason to think that Prost's case had been thrown out for lack of well-groundedness, and so they proceeded to take care of the problem themselves, re-adjudicate. But in Clevenger's case, that didn't come to their attention. And the fact that it didn't come to their attention is the distinguishing factor, and there is a rational basis for identifying. They were told they didn't have to go look. The statute didn't place an obligation on the secretary to investigate Clevenger's case to see whether or not it was thrown out for well-groundedness. Basically, the veteran was told, if you don't apply, you leave it to the vagaries of it coming to the VA's attention, because Congress said expressly that the VA doesn't have to look. And so, basically, you've left it to chance. And that is what the veteran in this case did in choosing not to file for the two-year deadline. And just briefly, I will note that even if the veteran won one of these constitutional claims, ultimately, the regional office determined that the claim was well-grounded and denied it on the merits, and because of that, even with everything we've said, the VCAA still wouldn't apply and wouldn't provide an avenue for the Court of Veterans' Appeals to assert jurisdiction. I don't even understand the government's argument in that regard. I frankly don't. As I understood the record, his claim in 1998 was rejected because he failed to present any evidence of a PTSD diagnosis. And I don't see how you can say rejection based on the fact that you failed to provide any evidence constitutes a merit determination. That's precisely what the criteria for well-grounded determination is. Okay, if I could try that. First, if you were found to be well-grounded... and you didn't present any evidence of a PTSD diagnosis, you're telling us it was found to be well-grounded and it was dismissed on the merits. Yes. How could it have been found to be well-grounded? Your Honor, admittedly, the record is thin on that and that there is not much guidance by the regional office, but the real key here is this. The point of the VCAA was to say, look, you people who have been found to be not well-grounded, we wanted you to get VA assistance, so we're going to give you another chance. But you people who were found to be well-grounded, well, you already got assistance, so we're not giving you any additional claim because you've already entered into this bucket. What happened at the regional office was it, for whatever reason, concluded that on the merits that the veteran here was denied on the merits as opposed to that. So he was already on that path to getting the assistance from the VA. I mean, at some level, it doesn't matter what box somebody checks, well-grounded or whatever, there's no dispute, right? You don't dispute that the basis for the denial of his claim was he didn't present any evidence of a PTSD diagnosis. No, actually, that's not quite accurate, Your Honor, respectfully. What it is is that he failed to provide a service stressor and he was given a questionnaire to fill out to, and I could refer the court to the JA-74, I'm sorry, 64, 67, or 78, but basically, he was denied on service connection. And I will acknowledge, Your Honor, that the record is thin about him actually having a PTSD and medical evidence. It's not in there, I will grant that. But the most important thing is this, once he is found to be well-grounded, even if incorrectly, once he is already in that group that is now going to get assistance from the VA in perfecting his claim, that's what the VCA is all about. It's to help these people who didn't get in that group and who did not get that assistance. He got in that group and then the assistance he got was a questionnaire asking him to fill out, provide information back to the VA about that stressor and which he never returned. So, a lot of times, labels don't matter because, oh, let's look behind the label. This is actually, Your Honor, one of those cases where the label does matter because once he got that label of being well-grounded and going on the merits, then he was entitled, or he accessed the assistance of the VA that Congress wanted when it passed the VCAA. When he got the assistance, he filed an application to reopen, right? He did that and... He eventually got a zero compensable rating of PTSD. In 2010, Your Honor. And what he's seeking here now is an earlier effective date for the zero rating. Yes, Your Honor, and since he's not pursuing it with Q, he's pursuing it with the VIF. The only other option would be if he could get the VCAA. If he were to get that, then can he challenge the zero rating? Then he could get his claim... In fact, he gets an earlier effective date first, right? And then he goes and backs up to get a meaningful plus rating. That would presumably be his objective. But first, he has to provide jurisdiction for reopening what would have been a final claim, and that's where we're left, Your Honor. And unless the Court has any further questions, we ask the Court to affirm the Court of Veterans Appeals holding that there's no jurisdiction here to review the petition as a whole. Thank you, Mr. Wycorn. You have a minute and a half? I have a minute and a half, Your Honor. The question of well-groundedness is a legal question. It's not a factual question. It doesn't matter what the R.O. said it did in 1998. The lower court had an obligation to review it de novo, and there was no evidence, so it was not well-grounded. It should have been dismissed, and therefore bring it within the statute. You have to remember, this is a remedial statute that must be interpreted liberally to give effect to its purpose. And with respect to the constitutional argument, there is no rational basis to distinguish between those two subgroups of veterans. If he'd been dismissed for lack of well-groundedness initially, clearly, then he wouldn't be where he is now. He wouldn't have a 0% rating, right? If it had been dismissed as being not well-grounded. And that had stuck. I mean, you appealed back in the old days, and it stuck. Then you'd be out of luck. Right, but the whole reason behind the statute is because... I'm just trying to get at you. The reason why you're here today is because you've got a diagnosis of PTSD and a 0% rating, so that's your standing. If the case, if the opinion had really been clearly, we're throwing you out for lack of well-groundedness the first time he comes around, and he didn't take that upstairs, or if he did and he failed, right, then his claim would be dead. Right, and he would still have to... So he's where he is because he got assistance. No, he did not get an examination. He did not get the normal things that... How did he achieve his diagnosis? That was later, in 2007, after the Act had said,  by giving them an examination to see if they had PTSD, and to see if that PTSD is related to something in service. In 2000, when the statute was passed, the VA was required to do that, even if the claim was not well-grounded, and that's why we have this retroactive re-adjudication provision, which basically removes the bar of well-groundedness, and if it was denied as not being well-grounded, and no assistance was given in terms of medical exam, the remedial mechanism is to re-adjudicate that claim that was previously denied as not being well-grounded, as if it had not been made, and the benefits would start all the way back in 1998. And that's the Logan decision supports my position on the constitutional argument. Thank you, Mr. Wakehorn. Thank you.